State ex rel. Mitchell Aero, Inc., Plaintiff-Appellant, v. Board of Review of City of Milwaukee, and another, Defendants-Respondents.

*No. 75-45. Argued October 4, 1976.—Decided November 3, 1976.*
(Also reported in 246 N. W. 2d 521.)

For the appellant there were briefs by *Herman E. Friedrich* and *Michael, Best & Friedrich,* and oral argument by *Herman E. Friedrich,* all of Milwaukee.

For the respondents there was a brief by *James B. Brennan,* city attorney, and *Walter J. Schutz,* assistant city attorney, and oral argument by *Mr. Schutz.*

CONNOR T. HANSEN, J. It is our opinion that the basic issue in this case is controlled by our decision in

*Mitchell Aero, Inc. v. Milwaukee* (1969), 42 Wis.2d 656, 168 N.W.2d 183.

Mitchell Aero, Inc., operates a private commercial aircraft business at General Mitchell Field in Milwaukee. The lease which was under consideration in *Mitchell, supra,* is still in effect. It is a twenty year lease, commencing on August 1, 1965, and containing an option to renew for five years. *Mitchell* concerned the 1966 and 1967 personal property tax assessment on Hangar No. 3, constructed by Aero prior to the execution of the lease, but nevertheless made a part of the leasehold premises by the lease, and Hangar No. 4, constructed by Aero after commencement of the lease and pursuant to the terms thereof. In *Mitchell, supra,* it was determined that these improvements (Hangar No. 3 and Hangar No. 4) were subject to personal property tax. The provisions of the lease are extensively discussed in *Mitchell,* and we deem it unnecessary to again repeat them.

The facts giving rise to this appeal are: (1) That between May 1971, and May, 1972, Aero completed construction of an addition to the "old firehouse" which was located on the leased land; (2) the improvement consisted of a complete renovation of the building into office space, at a cost to Aero of approximately $65,000; and (3) the construction of the improvements to the "old firehouse" were not required by the lease, but were approved by the county, as required by the lease.

The city assessor appraised the market value of the "old firehouse" improvements at $44,800. This was added to the previous year's market value of $145,300 of other personal property which apparently consisted of Hangar No. 3 and Hangar No. 4. Aero was notified by the city that for the year 1972, the total market value of its personal property for taxation purposes as located on the leased land at Mitchell Field was increased from $145,300 to $190,100.

Subsequently, based upon the $190,100 market value figure, the total improvements constructed by Aero on

the leased land were assessed as "other" personal property at the sum of $105,430 for 1972. The $105,430 figure reflects the fact that full market value was assessed at approximately 55 percent in Milwaukee in 1972.

Aero objected to the amount of the 1972 "other" personal property assessment that reflected the addition to the "old firehouse" on the basis that the county of Milwaukee, and not Aero, owned the premises. Aero requested a hearing on the matter before the defendant-respondent, Board of Review of the City of Milwaukee. A hearing on the merits of the objection was ultimately held and the Board of Review sustained the $105,430 assessment of "other" personal property.

Three issues are presented on appeal:

1. Is Aero precluded from raising the issue of "ownership" for tax purposes of improvements constructed by it on leased land by virtue of this court's decision in *Mitchell Aero, Inc. v. Milwaukee, supra.*

2. Did the city assessor act reasonably and according to law in arriving at the true cash value or fair market value of the subject leasehold improvements?

3. Does the record disclose credible evidence which taken as a whole would support the determination of the Board of Review which sustained the assessment of the subject leasehold improvements?

In *Mitchell, supra,* Aero took the position that the county acquired legal title to Hangar No. 3 by virtue of the lease and that Aero was required to build Hangar No. 4 by the terms of the lease, hence, since legal title to the improvements was in the county they were exempt from taxation under sec. 70.11 (2), Stats. The decision of this court was adverse to Aero.

In the instant case, Aero claims that the additions to the "old firehouse" are exempt from taxation principally because the additions were to an existing structure owned by the county and that Aero was not required by the lease to make the improvements.

*Mitchell, supra,* considered and determined two issues: (1) What is the meaning of the word "owned" in the phrase "property owned by any county" in sec. 70.11(2), Stats.; and (2) do the lease and other facts constitute the county of Milwaukee the owner within the meaning of that section?

■ This court held that the word "owned" as used in sec. 70.11(2), Stats., could not be equated with paper title only, but meant real or true beneficial ownership. It was further held that under the terms of the lease and the facts, Aero had sufficient beneficial ownership in the improvements to make them subject to taxation as other personal property, and that Aero retained and exercised such substantial attributes of ownership so as to constitute it the true owner, even though naked legal title to the improvements was vested in the county.

■ We are of the opinion the facts in the instant case are not sufficiently distinguishable from those of *Mitchell, supra,* so as to produce a different result. The improvements to the "old firehouse" are subject to taxation as other personal property.

Although Aero's original objection filed with the Board of Review objected only to the amount of the 1972 assessment for tax purposes as pertained to ". . . those certain premises known as the 'old firehouse' . . . ." Aero now contends that its objections were, and always have been, against the whole assessment of $105,430 as "other" personal property. We have serious doubts as to whether the record supports such a contention. However, whether Aero contests the whole or only part of the assessment is not significant to our decision in this case.

The thrust of Aero's first argument is that it cannot be taxed upon *any* of the improvements reflected in the $105,430 assessment for 1972 because Milwaukee county and not Aero is the owner of such improvements.

■ We believe it is abundantly clear that the ownership for the City of Milwaukee personal property tax

purposes of the leasehold improvements constituting the Hangar No. 3 addition and Hangar No. 4 has already been decided in the previous *Mitchell Case*. Aero has litigated that very issue once and under the principles of *res judicata* as set forth in *Lingott v. Bihlmire* (1964), 24 Wis.2d 182, 128 N.W.2d 625, 129 N.W.2d 329, and *Missionaries of La Salette v. Michalski* (1962), 15 Wis. 2d 593, 113 N.W.2d 427, cannot now relitigate it.

The fact that in the previous case the assessment was for the years 1966 and 1967, while here it is for 1972, has no significance to the issue of ownership. The parties remain the same; the issue of ownership remains the same; the lease remains the same; and it was largely upon the unambiguous terms of the lease that this court based its decision in the prior *Mitchell Case*. *See Mitchell, supra,* pp. 663, 664.

It is true that the prior case involved a stipulation of facts; but that stipulation itself, in the most part, referred directly to the terms of the lease. The parties definitely did not stipulate as to the issue of ownership. Only one fact outside of the lease provisions was relied upon by this court in reaching its decision—the fact that Aero amortized its cost of construction of the hangars as leasehold improvements over the term of the lease for income tax purposes. *See Mitchell, supra,* p. 664. This fact has not changed. Insofar as the $105,430 assessment figure reflects assessments for improvements constructed on the Hangar No. 3 addition and Hangar No. 4 (*i.e.,* the 1971 carry-over assessment figure) Aero is not free to raise the issue of ownership of those improvements for tax purposes.

 Aero further argues that buildings/improvements are real property within the definition of sec. 70.03, Stats., and that the county's exemption from taxation under sec. 70.11(2), extended to such improvements. This argument is dependent upon a finding that the

county is indeed the owner of the improvement for tax purposes. It totally ignores the existence of sec. 70.17(1), Stats., which specifically provides that improvements on leased land may be assessed as real or personal property. This court in *Town of Menominee v. Skubitz* (1972), 53 Wis.2d 430, 435, 192 N.W.2d 887, held that sec. 70.17(1), created an exception to the general definition of real estate contained in sec. 70.03, and sec. 70.17(1) controls the assessment of improvements on leased land.

The portion of the assessment figure which reflects assessments for improvements constructed later than 1966, and specifically including the improvements to the "old firehouse," completed prior to May 1, 1972, presents a somewhat different situation.

The prior *Mitchell Case* decided ownership of only improvements already existing at the time the lease was entered into (*i.e.*, the Hangar No. 3 addition) and improvements specifically required to be built under the terms of the lease (*i.e.*, Hangar No. 4 required by clause 11 of the lease.) The issue of ownership of improvements built at the discretion of Aero, with the approval of the county under clause 13 of the lease, was not litigated; nor was it essential to litigate that issue in the prior case. Thus, the *res judicata* doctrine would not apply. *Northwestern N. C. Co. v. State A. & C. Underwriters* (1967), 35 Wis.2d 237, 151 N.W.2d 104.

However, even if the prior *Mitchell Case* is not *res judicata* on the issue of ownership of improvements to the "old firehouse," that case represents convincing authority for the proposition that ownership for tax purposes of those improvements rests with Aero and not with the county.

This court in *Mitchell, supra,* recognized that under the lease agreement, some rights usually associated with ownership were in Aero and others in the county. This court measured the various indicia of ownership as re-

flected by the lease provisions and held that Aero possessed enough of the "sticks" comprising the "bundle [of] ownership" to conclude that Aero was the beneficial or true owner of the improvements for tax purposes. *Mitchell, supra,* pp. 662, 663.

The "sticks" in this case are exactly the same. The ·lease provisions are exactly the same. Aero is still claiming amortization on the improvements for tax purposes; and the lease provisions apply equally to improvements made at the discretion of Aero as they do to other previous improvements and to improvements required by the lease.

■ While Aero has, in its brief, presented numerous cases and argued the issue of ownership, it has presented nothing which would distinguish the fact situation presented here from the almost identical fact situation presented in the previous *Mitchell Case.* The beneficial and true ownership for tax purposes of the "old firehouse" improvement rests in Aero and not in the county.

## *VALUATION.*

Aero raises the further issue of the valuation of both the former and latter improvements. It argues that the improvements had no market value and thus were not taxable, and its brief states:

"Any property can be taxed only to the party, who, as owner, has the right to sell, transfer or dispose of it. It follows that if the party be unauthorized or utterly incapable of ever delivering any title to another, it is not taxable at all to him but only to the one who can. The specific statute so provides."

We are of the opinion that neither the statutes nor the case law support this assertion. When considering the valuation of property for tax purposes, assessors are strictly governed by the provisions of sec. 70.32, Stats.,

for real estate, and sec. 70.34 for personalty. Sec. 70.32 requires assessment ". . . at the full value which could ordinarily be obtained therefor at private sale; . . ." while sec. 70.34 requires assessment ". . . at their true cash value; . . ."

This court has recognized the difference in terminology of the two sections, but has long interpreted the two sections as merely containing different terminology to describe substantially the same method of valuation. *State ex rel. Baker Mfg. Co. v. Evansville* (1952), 261 Wis. 599, 53 N.W.2d 795; *State ex rel. Evansville Merc. Asso. v. Evansville* (1957), 1 Wis.2d 40, 82 N.W.2d 899; *Town of Menominee, supra,* p. 439.

The method of valuation generally has been to assess both personal and real property on the basis of its fair market value; *i.e.,* the amount it will sell for upon arms-length negotiation in the open market, between an owner willing but not obliged to sell, and a buyer willing but not obliged to buy. *Rosen v. Milwaukee* (1976), 72 Wis.2d 653, 242 N.W.2d 681; *State ex rel. Markarian v. Cudahy* (1970), 45 Wis.2d 683, 173 N.W.2d 627; *State ex rel. Garton Toy Co. v. Mosel* (1966), 32 Wis.2d 253, 145 N.W.2d 129.

This court has also recognized that some property might not be subject to appraisal on the above basis. Citing the methods of valuation set forth in ss. 70.32 and 70.34, Stats., the court, in *Baker, supra,* at pp. 608, 609, stated:

". . . These sections have often been construed. In each class of property they presuppose a value at which a willing buyer and a willing seller would deal. For property whose market is restricted or nonexistent and for unique property which is not for sale the appraisal is necessarily based on many factors other than actual sales of this or comparable property. Nevertheless, the task of the appraiser is to determine, as accurately as he can, the amount which the property *would* bring in the

period for which the assessment is made, both buyer and seller being *willing and able* to deal . . . ." (Emphasis added.)

The factors, other than actual sale, which have been considered relevant to the determination of market value in such instances includes cost, depreciation, replacement value, income, industrial conditions, location and occupancy, sales of like property, book value, amount of insurance carried, value asserted in a prospectus and appraisals produced by the owner. *Garton, supra,* p. 259; *State ex rel. Park Plaza S.C. v. Bd. of Rev.* (1973), 61 Wis.2d 469, 474, 213 N.W.2d 27. In the absence of actual sale, or sale of reasonably comparable property, all of the above factors which are ascertainable and which collectively have a bearing on the value of the property must be considered by the assessor in order to determine its fair market value. *Markarian, supra,* p. 686.

It is undisputed that the market for these leasehold improvements is at least restricted. Aero's ownership-interest in them can only be sold with the approval of the county. Even if the market were totally nonexistent, the improvements would still possess some value to Aero, because under the terms of the lease, clauses 17 and 18, Aero can realize income from the improvements by subletting storage and office space.

Thus the fact that the leasehold improvements here have a restricted market because they can only be disposed of or assigned with the approval of the county does not mean that their market value is nonexistent or even indeterminable. That market value can be determined by the assessor utilizing the aforementioned methods of evaluation. The only question which remains is whether the assessor utilized the statutory basis for the valuation. The facts show, that as to the leasehold improvements to the "old firehouse," the assessor did utilize the statutory basis.

Michael Lawent, chief appraiser for the City of Milwaukee, a man with twenty-five years' experience in the field, valued the leasehold improvements in question. As to the improvements to the "old firehouse," Lawent personally viewed and inspected the premises. He found that the building had been increased from 2,900 square feet to 3,608 square feet, that office spaces, vault, washrooms, lounge areas, instructional areas and an office machine area had all been added to the basic building, and that the building had been soundproofed, carpeted and air-conditioned.

Lawent was familiar with the lease and all its provisions. He knew that the land was owned by the county and that legal paper title to all improvements vested in the county upon completion. Lawent knew that Aero had expended approximately $65,000 to construct the improvements. Lawent was also well aware of the fact that there was no actual sale value to these improvements in that there had been no recent sale upon which to base the valuation.

Lawent thus turned to the next best available information to establish value. He utilized three basic methods to arrive at that figure, market, cost, and income approaches; all three of which are recognized as statutorily valid. *See: State ex rel. Park Plaza S.C., supra,* p. 475.

The assessor arrived at a valuation figure using each of the methods. He then considered the provisions of the lease and the actual cost of the improvements to Aero. The result was that he finally assessed the improvement at the lowest and most conservative valuation yielded by the various methods he used, *i.e.,* $44,800. Lawent then added that valuation to the $145,300 previous year's assessment for other improvements and arrived at a total assessment of $190,100.

The assessor considered all available information, and in the absence of comparable sales, the consideration of all other factors collectively bearing on the value of the property is entirely proper and within the statutory mandate for valuation. *See: Markarian, supra,* p. 686, and *State ex rel. Enterprise Realty Co. v. Swiderski* (1955), 269 Wis. 642, 645, 70 N.W.2d 34.

■ With respect to the valuation of the pre-1971 improvements, the record reflects that Lawent viewed all of the property of Aero and accepted Aero's claim of a $145,300 value therefor. Lawent did not testify as to his exact methods in arriving at that valuation. However, under the circumstances of this lease, and the fact that there had been no sale of those improvements or sales of comparable improvements, it is clear that Lawent was free to accept the valuation claimed by Aero for those improvements. Lawent himself had established that valuation for 1971 and it was apparently concurred in by Aero. Aero presented no evidence that that valuation was not accomplished on the statutory basis, and in the absence of such evidence, the valuation is presumed correct and valid. *State ex rel. Berg E. Corp. v. Spencer Rev. Bd.* (1971), 53 Wis.2d 233, 191 N.W.2d 892.

## JUDICIAL REVIEW.

The rules governing the standard review in the trial court and in this court in instances such as those presented here have often been stated. They were best drawn together in *State ex rel. Boostrom v. Board of Review* (1969), 42 Wis. 2d 149, 155, 156, 166 N.W.2d 184:

" 'The principles of law are well settled governing the jurisdiction of courts in reviewing the findings of boards of review on *certiorari.* The duties of boards of review are *quasi*-judicial and courts have no jurisdiction to dis-

turb their findings or determinations except where they act in bad faith or exceed their jurisdiction. *Brown v. Oneida County,* 103 Wis. 149, 79 N.W. 216. Judicial review of the action of boards of review on *certiorari* extends only to jurisdictional errors. *State ex rel. Miller v. Thompson,* 151 Wis. 184, 138 N.W. 628; *State ex rel. M. A. Hanna D. Co. v. Willcuts,* 143 Wis. 449, 128 N.W. 97. If a board of review does not act arbitrarily or dishonestly and the evidence presented before it is sufficient to furnish any substantial basis for the valuation found by the board, its decision will not be disturbed. *State ex rel. Kimberly-Clark Co. v. Williams,* 160 Wis. 648, 152 N.W. 450. The review here extends only to correction of jurisdictional errors and does not include mere errors of judgment as to the preponderance of the evidence. *State ex rel. Edward Hines L. Co. v. Fisher,* 129 Wis. 57, 108 N.W. 206. Upon *certiorari* to a nonjudicial body such as a board of review, the court will review the evidence only so far as to ascertain if there is reasonable ground for belief that the decision is the result of honest judgment, in which case it will not be disturbed. *State ex rel. N. C. Foster L. Co. v. Williams,* 123 Wis. 61, 100 N.W. 1048; *State ex rel. Vilas v. Wharton,* 117 Wis. 558, 94 N.W. 359. This court will review the proceedings to ascertain whether such body has kept within its jurisdiction and whether such board acted upon competent evidence sufficient to give it jurisdiction. *State ex rel. Wood Co. v. Dodge County,* 56 Wis. 79, 13 N.W. 680. The presumptions are all in favor of the rightful action of such board. The assessor's valuation of property is *prima facie* correct and is binding upon the board of review in the absence of evidence showing it to be incorrect. *State ex rel. Kimberly-Clark Co. v. Williams,* 160 Wis. 648, 152 N.W. 450.' *State ex rel. Pierce v. Jodon* (1924), 182 Wis. 645, 647, 648, 197 N.W. 189."

They were further reiterated in *Dolphin v. Board of Review* (1975), 70 Wis.2d 403, 408, 234 N.W.2d 277, wherein the court stated that on a review such as this only the following factors may be considered: (1) Whether the board kept within its jurisdiction; (2)

whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question. In addition, it has been held that failure to make the assessment on the statutory basis is an error of law and correctable by the courts on certiorari. *Garton, supra.*

Aero contests the assessment and the action of the Board of Review on only two bases: First, that it cannot be taxed because the county is the owner of the leasehold improvements, and second that as to Aero, the leasehold improvements have no market value and thus there is no basis to tax them.

As to the first argument, the previous *Mitchell Case* has been established to be *res judicata* on the issue of the ownership of the pre-1971 improvements (*i.e.,* the Hangar No. 3 addition and Hangar No. 4) and that same case is conclusive against Aero as to the ownership of the "old firehouse" improvements.

As to the second argument, it has been established that the assessor made his valuations on the proper basis. Aero presented no evidence that the pre-1971 valuations were invalid. None of the evidence relied upon by the assessor in computing valuation under the cost and income approaches for the "old firehouse" improvements was controverted by Aero. It presented evidence by two qualified appraisers that those leasehold improvements had no market value to Aero in that they could not be sold without the approval of the county. Both, however, admitted that the valuation of the assessor would probably be approximately correct if there was a market for the property. The evidence pertained only to the "old firehouse" improvements. As to the prior improvements, there was only the bare assertion of no market value by Aero.

It has been established that if the market for a particular piece of personal property is restricted, as in this case, or even is nonexistent, the assessor can still value such property by considering the next best information available, *i.e.*, all those other factors listed above which have bearing on value. The assessor did so here, and even considering the testimony of Aero's two appraisers, there was ample credible evidence in the record to support that valuation.

The assessor's valuation of property is prima facie correct. The burden of producing evidence to overcome the presumption of correct valuation rests with Aero. *State ex rel. Collins v. Brown* (1937), 225 Wis. 593, 275 N.W. 455; *Rosen, supra,* p. 661. Aero has failed to meet that burden both as to the pre-1971 leasehold improvements and as to the "old firehouse" improvements, offering no contrary evidence as to the former and unconvincing evidence as to the latter. The judgment of the trial court is affirmed.

*By the Court.*—Judgment affirmed.