DEMPZE CRANBERRY COMPANY, INC.,
Petitioner-Respondent,

v.

The BOARD OF REVIEW OF the VILLAGE OF
BIRON, and the Village of Biron, Wood
County, Wisconsin, Appellants.

BIRON CRANBERRY COMPANY, Petitioner-
Respondent,

v.

The BOARD OF REVIEW OF the VILLAGE OF
BIRON, and the Village of Biron, Wood
County, Wisconsin, Appellants.

JOHNSON CRANBERRY COMPANY, Petitioner-
Respondent,

v.

The BOARD OF REVIEW OF the VILLAGE OF
BIRON, and the Village of Biron, Wood
County, Wisconsin, Appellants.†

Court of Appeals

*No. 87–1588. Submitted on briefs February 12, 1988.—Decided
March 17, 1988.*

(Also reported 422 N.W.2d 902.)

---

† Petition to review pending. This petition was not disposed of
at the time the volume went to press. Its disposition will be reported
in a later volume.

For the appellants the cause was submitted on the briefs of *Richard J. Weber* of *Kelley, Weber, Pietz & Slater, S.C.,* of Wausau.

For the petitioner-respondent the cause was submitted on the brief of *Francis J. Podvin* of *Nash, Podvin, Tuchscherer, Huttenburg, Weymouth & Kryshak, S.C.,* of Wisconsin Rapids.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J.   This case involves the valuation of cranberry marshes for purposes of local real estate taxation. The issue is whether the village assessor, in determining the value of the taxpayers' cranberry beds under sec. 70.32(1), Stats.,[1] was required to accept as the fair market value the allocations of sales prices between beds and vines made in sales of comparable cranberry marshes. The issue arises because cranberry vines are exempted from general property taxes. Secs. 70.11(30)[2] and 70.111(4).[3] We conclude that the assessor was not required to accept such allocations and that the assessments comply with sec. 70.32(1).

[1]Section 70.32(1), Stats., provides in part:

Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale.

[2]Section 70.11, Stats., provides:

Property exempted from general property taxes is:
    (30)  All perennial plants that produce an annual crop.

[3]Section 70.111, Stats., provides:

The property described in this section is exempted from general property taxes:
    (4)  Growing and harvested crops, ... including ... perennial plants that produce an annual crop ....

We therefore reverse the court's order remanding this case to the village board of review.

## I.

## BACKGROUND OF THE CASE

The taxpayers are three cranberry companies owning cranberry marshes in the Village of Biron. They filed objections to the 1986 assessments on their marshes. The assessments were confirmed by the village board of review. The taxpayers obtained review of the decisions of the board of review by writ of certiorari pursuant to sec. 70.47(13), Stats. The court set aside the assessments and remanded the cases to the board with directions to assess the property based upon six comparable sales, giving effect to the allocation of the sales prices between beds and vines made in those sales.

## II.

## STANDARD OF REVIEW

The standard of review in the trial court and in this court of the decision of the board of review is set forth in *Darcel v. Manitowoc Review Bd.,* 137 Wis. 2d 623, 625, 405 N.W.2d 344, 345 (1987). Courts have no jurisdiction to disturb the findings and determinations of boards of review except where they act in bad faith or exceed their jurisdiction. *Id.* Our review extends only to jurisdictional errors and does not include mere errors of judgment as to the preponderance of the evidence. *Id.* at 626, 405 N.W.2d at 345.

We must consider the evidence of value before the board of review in the light of the presumption of correctness of the assessor's valuation. Sec. 70.49(2), Stats; *State ex rel. Markarian v. Cudahy,* 45 Wis. 2d 683, 686, 173 N.W.2d 627, 629 (1970). The assessor's valuation will not be set aside in the absence of evidence showing it to be incorrect. *Id.* We will not disturb the findings of the board of review if the evidence presented in favor of the assessment furnishes a substantial basis for that valuation. *Id.* However, these rules presuppose that the method of valuation is in accordance with the statutes. *Id.* Failure to make an assessment on the statutory basis is an error of law, correctable by the courts on certiorari. *State ex rel. Kesselman v. Sturtevant,* 133 Wis. 2d 122, 127, 394 N.W.2d 745, 747 (Ct. App. 1986).

## III.

## BASIS OF VALUATION

■

Real estate is to be valued for purposes of assessment of local real estate taxes from actual view or from the best information that the assessor can practicably obtain, "at the full value which could ordinarily be obtained therefor at private sale." Sec. 70.32(1), Stats. Commonly stated, sec. 70.32(1) requires real estate to be assessed at its fair market value. Fair market value is consistently defined as the amount the property will sell for upon arm's-length negotiation in the open market, between an owner willing but not obligated to sell, and a purchaser willing but not

obligated to buy. *Darcel,* 137 Wis. 2d at 628, 405 N.W.2d at 346.

The "best information" from which fair market value of real estate may be derived is a sale of the property or if there has been no such sale, then sales of reasonably comparable property. *Markarian,* 45 Wis. 2d at 686, 173 N.W.2d at 629. In the absence of such sales, the assessor may consider all the factors collectively which have bearing on value of the property. *Id.* It is error to use this method of valuation when the market value is established by a fair sale of the property in question or like property. *State ex rel. Enterprise Realty Co. v. Swiderski,* 269 Wis. 642, 645, 70 N.W.2d 34, 35 (1955).

## IV.

### VALUATION OF THE CRANBERRY BEDS

The taxpayers contend that the fair market value of their cranberry beds was established by the comparable sales and that the assessor's reliance on factors outside those sales was contrary to sec. 70.32(1), Stats.

The assessor's task was to determine the fair market value of the taxpayers' cranberry beds exclusive of the tax-exempt vines. To determine the fair market value of the beds and vines, she used six relatively contemporaneous sales of marshes reasonably comparable to the taxpayers' marshes. However, she refused to accept the allocations by the parties of the sales prices between the beds and the vines. Instead, she determined the value of the vines by a combined income approach, cost approach and market data approach. She deducted that value from the sales

prices to determine the true purchase price of the beds in each comparable sale.

The taxpayers do not quarrel with the validity of the assessor's approach in the absence of comparable sales.[4] They contend that because the comparable sales were arm's-length transactions, the assessor and the board made errors of law in refusing to accept the allocations of the purchase prices made by the parties to those sales.

The parties agree that the six sales used by the assessor meet the test of "reasonable comparability." *Rosen v. Milwaukee,* 72 Wis. 2d 653, 665, 242 N.W.2d 681, 686 (1976). If the assessments in question were of the taxpayers' marshes, including the vines, these sales would establish market value. However, we are presented with the unique situation in which part of the property sold is not subject to assessment and taxation.

It does not follow from the general comparability rule that the fair market value of the assessable part of the property is set by the allocation by the parties of the purchase price between the taxable and tax-exempt parts of the property. Internal comparability may be destroyed by a factor or factors which allocate too much of the purchase price to one part of the property and too little to another part. "It is ... important to consider the conditions of sale, including ... its general mode and character insofar as they tend

---

[4]The trial court stated: "If, as a matter of law, the assessor and the board of review should adopt the allocated values, then it would be error to go to all of these other factors and all of these other approaches .... It's either [you] use the allocation or you don't. If you don't have to use them, what she did was proper." The board has adopted the court's statement of the issue.

to indicate an arm's-length transaction." *Rosen,* 72 Wis. 2d at 665, 242 N.W.2d at 686.

The assessor testified that her investigations established values for vines which were considerably less than the values allocated to the purchase price of the vines by the parties to the comparable sales.[5] She investigated through growers, builders of cranberry marshes, financial institutions, a national firm which develops cost data and factors for appraisers, appraisal associations, the federal land bank, the county agricultural agent, the Wisconsin Department of Revenue, and the University of Wisconsin Agricultural Department. She testified that she relied on the Wisconsin property assessment manual.

The assessor did not accept the parties' allocations of the purchase prices of the comparable sales as being fair attributions to the real and personal property involved in each sale. She testified that the individual who negotiated the six comparable sales stated that there was more allocation applied to the exempt and personal property.

█

We conclude that the assessor reasonably concluded that the allocations were influenced by considerations which made questionable their use to determine the fair market value of the constituent elements of the sales. The assessor was not required, however, to reject the comparables in their entirety because the internal allocations were suspect. It was proper for her to accept the sales insofar as they exhibited reasonable comparability but to determine

---

[5]Some of the assessor's testimony as to information she had been given was disputed by the alleged sources. The credibility of the witnesses was for the board to weigh. *See State v. Teynor,* 141 Wis. 2d 187, 205, 414 N.W.2d 76, 83 (Ct. App. 1987).

by other methods the value of that part of the property in each sale whose price did not accurately reflect fair market value.

The taxpayers rely on *State ex rel. Keane v. Board of Review,* 99 Wis. 2d 584, 299 N.W.2d 638 (Ct. App. 1980). They argue that *Keane* establishes that the fair market value of the component elements of real estate is determined by comparable sales which include a like component. *Keane* does not stand for a new proposition of law. We simply held that a lease of comparable leasehold improvements was the "best information" available in valuing other leasehold improvements. *Id.* at 594–95, 299 N.W.2d at 643.

We conclude that the method of assessing the taxpayers' cranberry marshes was in accordance with sec. 70.32(1), Stats. The board of review acted according to law in affirming the assessments.

*By the Court.*—Order reversed with directions to enter judgment affirming the board's determination.